IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSHUA BOND, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-00416 |
| ) | |
| DAVID SEXTON, Warden, ) | Judge Campbell |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner Joshua Bond, a prisoner in state custody who is currently incarcerated at the Morgan County Correctional Complex in Wartburg, Tennessee, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). The respondent has filed an answer in opposition to the petition, along with a complete copy of the underlying state-court record. The petition is ripe for review. For the reasons set forth herein, the petition will be denied and this matter dismissed.

### I. PROCEDURAL BACKGROUND

In February 2008, the petitioner, Joshua Bond, was indicted by a Davidson County Grand Jury on one count of first-degree murder. (ECF No. 20-1, at 4–6.) He pleaded guilty on June 5, 2009 to the lesser included offense of second-degree murder and, as part of the plea agreement, received an out-of-range sentence of 40 years' incarceration, to be served at 100%. (ECF No. 20-1, at 7–9 (Petition to Enter Plea of Guilty), 10 (order accepting plea), 11 (Judgment).) Bond did not pursue a direct appeal of his conviction or sentence, but he filed a timely state petition for post-conviction relief on November 9, 2012. (ECF No. 20-1, at 12.) The trial court appointed counsel, who filed an amended petition. (ECF No. 20-1, at 22.) After that attorney withdrew, a second post-conviction attorney was appointed, who filed a second amended petition for post-conviction relief. (ECF No. 20-1, at 26.) The focus of all three petitions was the petitioner's contention that his trial counsel was ineffective for failing to ensure that his plea was knowing and voluntary. After a hearing, the trial court entered an order denying the petition. (ECF No. 20-1. at 34–42.) That decision was affirmed on appeal. *Bond v. State*, No. M2011-02223-CCA-R3-PC, 2012 WL 3776677 (Tenn. Ct. Crim. App. Aug. 31, 2012), *perm. to appeal denied* (Tenn. Jan. 22, 2013).

Bond filed his petition under 28 U.S.C. § 2254 in this Court on April 18, 2012. (ECF No. 1, at 14 (prisoner's oath as to date the petition was placed in the prison mailing system).) The respondent has filed an answer along with a complete copy of the underlying record. The respondent concedes that the petition is timely. This Court has jurisdiction.

## II.     STATEMENT OF THE EVIDENCE

At the plea hearing, the state presented an offer of proof, as follows:

> [T]he State's proof would be that on September 27, 2007, the defendant entered the market at 1497 County Hospital Road here in Nashville, Davidson County, which was owned by Mr. Gene Kim. He entered with another person at approximately 8 o'clock and attempted to steal items from the store. He was caught by Mr. Kim. There was a confrontation between Mr. Kim and the defendant. The defendant left the store, returned about an hour later[,] and entered the store and shot Mr. Kim once, killing him instantly. The defendant was identified primarily through the surveillance video that was obtained by officers of the Metropolitan Police Department after 9-1-1 was called. A subsequent investigation [led] to the fact that the defendant was in fact the person who had pulled the trigger on the fatal shot.

(ECF No. 20-3, at 21.)

The entire plea colloquy was admitted into evidence (*see* ECF No. 20-3, at 7–24), but the portion quoted at length by the Tennessee Court of Criminal Appeals is most pertinent for this Court's purpose:

> THE COURT: Mr. Bond, I need to explain something to you; as I've indicated previously, if you were convicted of first degree murder, you would receive a life sentence without—life sentence with parole means that you would have to serve 51 years before you would be eligible for release; do you understand that?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Also under that law in Tennessee, if you're convicted of second degree murder, whatever sentence you would [have] received would be imposed at 100 percent. You would have to serve 85 percent of the sentence, you'd get some jail credit, but a maximum of 15 percent jail credits before—towards parole eligibility, in other words, you'd have to serve 85 percent of the sentence before you would be eligible for parole, do you understand that?[1]
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Also, under our sentencing laws, where you fall within the range of punishment, which for second degree murder is 15 to 60 years, where you fall within that range of punishment is dictated by the number of prior felony convictions that you have, do you understand that?
>
> [PETITIONER]: Yes, sir.

---

[1] As the appellate court explained, the petitioner would not actually be eligible for parole "but would have a 'flattened' sentence, *i.e.*, he would serve 100% of his sentence less sentence credits earned and retained, but in any event, he would serve not less than 85% of his total sentence. Tenn. Code Ann. § 40–35–501(i)(1) (2010)." *Bond*, 2012 WL 3776677, at *1 n.2.

> THE COURT: [Y]ou'd be convicted as a range one offender, do you understand that?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: If you went to trial and if convicted of second degree murder, as a range one offender, the possible punishment that the Court could impose at the sentencing hearing would be between 15 and 25 years, do you understand that?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: That would be served at a hundred percent, but that would be your range of punishment, between 15 and 25 years, do you understand that?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Range two punishment for second degree murder is from 25 to 40 years, and range three is from 40 to 60 years; the sentence that you're accepting is a 40-year sentence, which could be either range two or three, do you understand that?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Do you understand that that is clearly a much greater punishment than I could impose on you if you went to trial and were found guilty of second degree murder?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Okay. However, it is of course less than the sentence for first degree murder, but you understand that the sentence you're agreeing to and accepting is a much greater sentence than I could impose if you went to trial and were found guilty of second degree murder, do you understand that?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: And with that understanding, are you going to agree to waive your range of punishment and accept that greater—greater sentence than I could otherwise impose?
>
> [PETITIONER]: Yes, sir.

*Bond*, 2012 WL 3776677, at *1–2. After that exchange, the court accepted the plea and plea agreement, and sentenced the petitioner to 40 years' incarceration at 100%. (*See* ECF No. 20-1, at 11 (Judgment).)

Thereafter, the petitioner filed his post-conviction petition and amended petitions, asserting that his plea, specifically the agreement to the out-of-range sentence, was not knowing and voluntary, and that his trial counsel was ineffective for failing to ensure that his plea was knowing and voluntary.

The Tennessee Court of Criminal Appeals summarized the evidence presented at the post-conviction hearing concerning that claim as follows:

> At the evidentiary hearing, petitioner testified that he was represented at trial by an assistant district public defender (hereinafter referred to as "trial counsel"). He testified that trial counsel received discovery from the State, provided him with a copy, and reviewed the

material with him. Trial counsel visited him in the jail and spoke with him about witnesses and evidence the State intended to use at trial. Petitioner was aware of the store surveillance tape the State intended to use as evidence at his trial, and he knew the tape showed him shooting the victim in the head. Trial counsel also discussed possible defenses with him. Petitioner believed trial counsel visited him "at least maybe 10 to 15" times.

. . . .

During the pendency of his case, petitioner believed he would proceed to trial. Trial counsel did not inform him of a plea offer until days before the trial. Petitioner was charged with first degree murder and faced at least fifty-one years before he would be eligible for release. The State offered to allow him to plead guilty to the lesser charge of second degree murder with a sentence of forty years. Petitioner testified that trial counsel advised him that he was likely to be convicted of first degree murder and that a forty-year sentence was probably the best alternative. He testified that trial counsel failed to explain to him that if he were convicted by a jury of second degree murder, his sentence would have been fifteen to twenty-five years as a Range I offender. He stated that trial counsel first presented him with the plea agreement on the Friday preceding his Monday trial date and that she did not review the agreement with him. He further testified that because the court proceedings were hurried, he did not have time to read the plea agreement. He said that trial counsel told him to just say, "Yes, sir," when they approached the bench to enter the plea. Petitioner testified that he signed the agreement because he "was aware of . . . the years," but he claimed at the evidentiary hearing that he "was not aware of the range of punishment." He maintained that had he known about the range of punishment for second degree murder, he would have gone to trial and not entered a guilty plea.

. . . .

Petitioner acknowledged that trial counsel informed him that the plea agreement entailed a forty-year sentence with a possible fifteen percent "good and honor credit." He stated that he did not understand the plea colloquy and that he only answered "yes" because his attorney instructed him to do so. However, petitioner testified that he wanted to accept the plea in court because the State offered "a better deal" than the possible fifty-one calendar year sentence for first degree murder. He has since changed his mind because he had an opportunity to read the plea agreement.

Trial counsel testified that at the time of the evidentiary hearing, she had practiced criminal law for thirteen years. She testified that she communicated the State's plea offer to petitioner the day she received it. She recalled that she received the offer approximately one and a half weeks prior to trial. The State had previously indicated it would not make an offer because of the strength of the proof against petitioner. However, after speaking with family members of the victim, the State extended an offer of second degree murder with a forty-year sentence. Trial counsel urged the State to consider a sentence of thirty-two years but did not inform petitioner of her efforts because she did not want him to become hopeful.

. . . .

Trial counsel testified that she did not personally review the aspect of the plea agreement where he would be pleading out-of-range with petitioner but that another assistant public defender who was assisting her did so. She further believed that the likelihood petitioner would be convicted of first degree murder was ninety-nine percent. Trial counsel said petitioner was confused about her instruction to him to say, "Yes, sir." She clarified that she always advised clients to be respectful and answer, "Yes, sir," and "No, sir," but that she did not advise him to lie to the court. Trial counsel said petitioner did not initially want to accept a plea offer and wanted to proceed to trial. However, he received pressure from his

family and changed his mind on the Thursday prior to the Monday trial. Trial counsel testified that the section of the plea agreement stating petitioner waived the range of punishment was not in her handwriting and was not on the form when she reviewed it with petitioner. She said that it might have been added after the plea was entered.

On cross-examination, trial counsel stated that petitioner and her assistant did not have a good working relationship. Friction existed between the two of them. She attributed it to the fact that her assistant was very blunt with petitioner about his decision to go to trial and confronted him with the realities of his case.

*Id.* at *2–4.

## III. DISCUSSION

Bond presents only one ground for relief in his petition in this Court: that his trial counsel was ineffective, in violation of his Sixth Amendment rights, in that she failed to fully explain the consequences of his plea agreement and the fact that the sentence stipulated in the plea agreement, forty years at 100%, was outside the range of the punishment he could have received if he had been found guilty of second-degree murder at a trial. The state concedes that this claim was fully exhausted in the Tennessee state courts.

The Supreme Court recently reconfirmed that criminal defendants' Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, --- U.S. ----, 132 S. Ct. 1376, 1384 (2012). More specifically, the Court noted that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). In *Strickland*, the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must first "show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

Under 28 U.S.C. § 2254, however, federal habeas relief may not be granted unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770,

785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

In addressing Bond's claim of ineffective assistance of counsel, the Tennessee Court of Criminal Appeals correctly articulated and discussed at some length the *Strickland* standard. *See, e.g.*, *Bond*, 2012 WL 3776677, at *5 ("To prevail on his claim of ineffective assistance of counsel, petitioner must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense." (citing *Strickland*, 466 U.S. at 688)). Then, after having articulated that standard, the court of criminal appeals considered the petitioner's claim of ineffective assistance during the plea process as follows:

> Petitioner claims that trial counsel did not fully inform him of the nature and consequences of the plea agreement and that he did not understand the ranges of punishment. In effect, petitioner claims that his guilty plea was not knowingly, voluntarily, or intelligently made.
>
> A guilty plea must be entered knowingly, voluntarily, and intelligently. If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. To make such a determination, the court must examine whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. Courts should consider the following factors when ascertaining the validity of a guilty plea: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.
>
> To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Rule 11 of the Tennessee Rules of Criminal Procedure sets forth . . . the requirements for guilty pleas. . . .
>
> . . . .
>
> Rule 11 also requires that the trial court ascertain that the plea is "voluntary and is not the result of force, threats, or promises," other than those contained in the plea agreement. Tenn. R. Crim. P. 11(b)(2). . . .

> At the evidentiary hearing, post-conviction counsel questioned petitioner and trial counsel in detail about the guilty plea proceedings. Petitioner testified that he did not understand he would be entering a plea outside of his range of punishment and that trial counsel did not explain that the sentence was greater than the sentence that could be imposed if the jury convicted him of second degree murder. He claimed that had he been aware of these facts, he would have proceeded to trial. Trial counsel testified that she did not explain the details of the plea agreement to petitioner but her assistant, another assistant district public defender, did so. The transcript of the plea colloquy, introduced as an exhibit at the evidentiary hearing, confirms that the trial court strictly followed the mandates of Rule 11 of the Tennessee Rules of Criminal Procedure and applicable state and federal law. After a full evidentiary hearing, the post-conviction court found that petitioner's guilty plea was knowingly, voluntarily, and intelligently entered.
>
> In denying relief, the post-conviction court relied on the transcript of the plea colloquy. It also implicitly found that petitioner's testimony at the hearing was not credible. The court heard conflicting testimony from trial counsel and petitioner on this issue and credited trial counsel's testimony. The trial court is the best source to determine the demeanor, credibility of witnesses, and the nuances of the evidentiary hearing. Moreover, petitioner's testimony at the post-conviction hearing was in direct conflict with his testimony at the guilty plea hearing that he understood the range of punishment and that he understood he was pleading outside of the applicable range. A petitioner's testimony at a guilty plea hearing constitute[s] a formidable barrier in any subsequent collateral proceeding because [s]olemn declarations in open court carry a strong presumption of verity. In this case, the post-conviction court credited petitioner's testimony during the guilty plea hearing over his testimony at the post-conviction hearing.
>
> The evidence does not preponderate against the findings of the post-conviction court. It appears the petitioner is suffering from a classic case of "Buyer's Remorse," in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.
>
> We find that petitioner's guilty plea was knowingly, voluntarily, and intelligently entered. This issue is without merit.

*Bond*, 2012 WL 3776677, at *7–9 (most internal quotation marks and citations omitted).

In his present petition, Bond alleges that he did not receive the effective assistance of counsel prior to entering his guilty plea because trial counsel "failed to explain that [he] was pleading outside [his] range of punishment." (ECF No. 1, at 5.) Specifically, the petitioner states: "I only have one prior felony, but I plead[ed] out as a range two or three offender only because [counsel] never explain[ed] the different ranges of punishment to me. Which is why I plead[ed] out to 2nd degree murder[,] 40 years at a 100%." (*Id.*)

As set forth above, however, the plea colloquy firmly established that the trial court fully explained to the petitioner that the plea agreement provided for an out-of range sentence far in excess of what the petitioner could receive if he were convicted of second-degree murder at a trial. Because the trial court ensured that the petitioner was fully informed of all the relevant facts and that his plea was knowing and voluntary, the petitioner cannot establish that he was prejudiced by any purported failure on the part of his trial

attorneys. The Tennessee Court of Criminal Appeals addressed this claim during the petitioner's post-conviction appeal, noting that the petitioner was not prejudiced and that the trial court clearly resolved any factual disputes in favor of the State. Its rejection of the petitioner's claim was not an unreasonable application of clearly established Sixth Amendment jurisprudence, nor was it based upon a reasonable determination of the facts in this case. *Cf.* 28 U.S.C. § 2254(d)(1), (d)(2).

The petitioner is not entitled to relief on the basis of this claim.

**IV.    CONCLUSION**

For the reasons set forth herein, Joshua Bond's petition under § 2254 will be denied and this matter dismissed with prejudice. An appropriate order is filed herewith.

_____
Todd Campbell
United States District Judge